UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ELECTRONIC PUBLICATION ONLY

DEVON BEAUMONT,

                Plaintiff,

- versus -

CABLEVISION SYSTEMS CORPORATION,

                Defendant.

MEMORANDUM AND ORDER

10-CV-3585 (JG) (SMG)

A P P E A R A N C E S :

    GAMIEL A. RAMSON
        277 Broadway
        Suite 706
        New York, New York 10007
        *Attorney for Plaintiff*

    JACKSON LEWIS LLP
        One North Broadway
        15th Floor
        White Plains, New York 10601
    By:   Michelle E. Phillips
        Timothy Domanick
        *Attorneys for Defendant*

JOHN GLEESON, United States District Judge:

        In this action, plaintiff Devon Beaumont asserts a claim of retaliation, in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* (the "ADEA"), the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.* (the "NYSHRL"), and the New York City Human Rights Law, N.Y.C. Admin. Code, § 8-101 *et seq.* (the "NYCHRL"), against defendant Cablevision Systems New York City Corporation ("Cablevision").[1] I previously granted Cablevision's partial motion to dismiss Beaumont's other claims. After discovery,

---

[1] Cablevision is incorrectly named in the caption.

Cablevision has now moved for summary judgment on Beaumont's remaining retaliation claim. For the reasons below, the motion is granted.

BACKGROUND

A.  *Factual Background*

Cablevision is a telecommunications, media and entertainment company. Def.'s Rule 56.1 Stmt. ¶ 10, ECF No. 34.[2] Cablevision employed Beaumont as a field service technician from December 29, 1999, until he was terminated on April 8, 2009. *Id.* ¶¶ 22, 78. Cablevision's technicians are ranked into various grades and Beaumont's highest grade was grade 12. *Id.* ¶ 22.

1.  *Beaumont's Efforts To Obtain a Promotion and Purported Complaints of Age Discrimination*

Sam Magliaro, Cablevision's Vice President of Field Operations in Brooklyn, New York, regularly held breakfast meetings with other Cablevision employees. *Id.* ¶¶ 19, 27. William Entenmann, Cablevision's Director of Administration for its Field Operations Department in Brooklyn, sometimes joined Magliaro for these meetings. *Id.* ¶¶ 17, 29.

Beaumont attended a breakfast meeting with Magliaro and Entenmann in the spring of 2008. *Id.* ¶ 31; *see also* Beaumont Aff. ¶ 4, ECF No. 36. Around the same time, Beaumont had applied for a promotion to a grade 14 field service technician and did not receive the promotion. Def.'s Rule 56.1 Stmt. ¶¶ 34–37. Cablevision asserts that this breakfast meeting took place before Beaumont had applied for the promotion, while Beaumont asserts he had already sought and been denied the promotion. *Compare id.* ¶¶ 31–34, *with* Beaumont Aff. ¶ 4. According to Beaumont, who was 44 years old at the time, he complained at this breakfast

---

[2]  Except as noted, the facts are not materially in dispute.

2

meeting that he was being discriminated against on the basis of age because the most recent promotions had gone to younger technicians, with less tenure and whom Beaumont had helped to train. Beaumont Aff. ¶ 5.

Beaumont attended a second breakfast meeting in October or November 2008. Def.'s Rule 56.1 Stmt. ¶ 39; Beaumont Aff. ¶ 6. It is undisputed that by this time, his application for a promotion had been denied. According to Beaumont, he again complained about age discrimination at the second breakfast meeting. Beaumont Aff. ¶ 6. Cablevision disputes this, asserting that Beaumont never complained about age discrimination. Def.'s Rule 56.1 Stmt. ¶¶ 42–43. According to Cablevision, Beaumont merely complained that others with less tenure at the company, and whom he had trained, had received promotions instead of him. *Id.* ¶ 41.

In early 2009, Beaumont applied again for a promotion to grade 14. *Id.* ¶¶ 45–46. Beaumont did not receive a promotion and was informed of this decision on March 31, 2009. Beaumont Aff. ¶ 15; Def.'s Rule 56.1 Stmt. ¶ 48.

In both instances that Beaumont applied for a promotion, Cablevision evaluated him and other applicants using a numerical score. Def.'s Rule 56.1 Stmt. ¶ 36. The score was based on several factors: time with the company, time in the employee's present grade, the employee's last performance evaluation, a supervisor's ranking, performance during an interview, and the "Finest in the Field" index (a composite rating based on the employee's field performance). *Id.* Different weights were assigned to each factor, which were then combined to produce an overall score. *See id.*; *see also* Entenmann Aff. Ex. E, ECF No. 33-6. Using this score, Cablevision was able to rank the candidates. *See* Def.'s Rule 56.1 Stmt. ¶ 36.

The first time Beaumont applied for a promotion, he was ranked eighth out of 25 candidates. *Id.* ¶ 37. Cablevision promoted three candidates, each of whom was ranked above

3

Beaumont. *Id.* The second time Beaumont applied for a promotion, he was ranked fifth out of 13 candidates. *Id.* ¶ 48. Again, the candidates selected for a promotion were each ranked above Beaumont. *Id.* ¶ 49.

2. *Events Surrounding Beaumont's Termination*

Cablevision provides its products to employees for no cost or at a discounted cost, a benefit it calls the Employee Product Benefit (the "EPB"). *Id.* ¶ 53. Pursuant to company policy, employees must use products provided pursuant to the EPB in their primary residence only. *Id.* ¶ 54. Cablevision utilizes its Equipment Locator Technology ("ELT") to verify the location of its digital cable boxes and, thus, to verify that employees are complying with the EPB policy. *Id.* ¶¶ 56–57. Violation of this policy is grounds for termination. *Id.* ¶ 58.

Beaumont took advantage of the EPB and obtained four cable boxes and a modem for no cost. *Id.* ¶ 59. At some point in early 2009, Cablevision's ELT indicated that one of Beaumont's four cable boxes was not located in his primary residence, an apartment in Brooklyn. *Id.* ¶ 61. After Entenmann learned of the ELT indication, he and Michael Louisor, Cablevision's Manager of Human Resources, met with Beaumont to discuss the matter on April 1, 2009, at approximately 8:30 A.M. *See id.* ¶¶ 18, 63; Beaumont Aff. ¶ 16.

At the meeting, Beaumont told Entenmann and Louisor that all of his cable boxes were in his apartment. Def.'s Rule 56.1 Stmt. ¶ 64; Beaumont Aff. ¶ 16. Entenmann then contacted another Cablevision employee who verified that the ELT indicated one box was not in Beaumont's apartment. Def.'s Rule 56.1 Stmt. ¶ 65. Entenmann asked Beaumont if they could visit Beaumont's apartment to physically verify the box's location and Beaumont gave his permission. *Id.* ¶¶ 66–67; Beaumont Aff. ¶ 16.

4

Entenmann, Louisor and Beaumont arrived at the apartment between 9 and 10 A.M. Def.'s Rule 56.1 Stmt. ¶ 68; *see also* Beaumont Aff. ¶ 18. Beaumont told Entenmann and Louisor that he had given his apartment keys to a friend, Arlene Bennett, so that she could let some workmen into the apartment while he was at work. Def.'s Rule 56.1 Stmt. ¶ 69; *see also* Beaumont Aff. ¶ 18.[3] Beaumont called Bennett numerous times, but was unable to reach her. Def.'s Rule 56.1 Stmt. ¶ 70; Beaumont Aff. ¶ 18. After roughly two hours of waiting, they left Beaumont's apartment. Def.'s Rule 56.1 Stmt. ¶ 73; Beaumont Aff. ¶ 18.

Beaumont received a text message from Bennett stating that she was at the hospital with her grandmother and would not be able to go to the apartment before 3:00 P.M. Def.'s Rule 56.1 Stmt. ¶ 71; Beaumont Aff. ¶ 19. According to Cablevision, Entenmann offered to drive Beaumont to the hospital to get the keys from Bennett, but Beaumont stated that he did not know which hospital Bennett's grandmother was in. Def.'s Rule 56.1 Stmt. ¶ 72. Beaumont asserts Entenmann's offer was never made, and agrees that he did not know where Bennett was located. Beaumont Aff. ¶ 21.

After returning to Cablevision's facility, Entenmann told Beaumont that he was suspended without pay pending further investigation. Def.'s Rule 56.1 Stmt. ¶ 74; Beaumont Aff. ¶ 22. According to Cablevision, it used its ELT later that day to again determine the location of Beaumont's cable box. Def.'s Rule 56.1 Stmt. ¶ 75. Its ELT indicated that the box "suddenly went live on the correct node, *i.e.*, appeared to be located in [Beaumont's] primary residence at 3:00 p.m. that day – the exact same time that [Beaumont] purportedly regained access to his primary residence." *Id.* Beaumont invited Entenmann to return to his home that afternoon to verify the location of the box. Beaumont Aff. ¶ 23.

---

[3] According to Beaumont, he told Entenmann and Louisor he did not have his keys before they went to his apartment and that they insisted on going anyway. *See* Beaumont Aff. ¶ 18.

5

Entenmann and Louisor believed the ELT information was accurate. Def.'s Rule 56.1 Stmt. ¶ 76. They also found Beaumont's explanation for his inability to gain access to his home the morning of April 1, 2009, to be not credible. *Id.* Entenmann recommended to Magliaro that Cablevision terminate Beaumont's employment due to his violation of EPB policy. *Id.* ¶ 77. Magliaro accepted the recommendation and Cablevision terminated Beaumont's employment effective April 8, 2009. *Id.* ¶ 78.

According to Beaumont, Cablevision's ELT sometimes produces inaccurate results and Cablevision management was aware of this. *See* Beaumont Aff. ¶¶ 27–31. He therefore asserts that Cablevision "cannot be sure" if a cable box is inside a particular location without a physical inspection of the location. *Id.* ¶ 32. Beaumont also notes that the day after his suspension, a field service technician was dispatched to his apartment because his upstairs neighbor had a service issue "resulting in a signal loss because of a splitter at [his] residence." *Id.* ¶ 24. Beaumont suggests this may have been related to the ELT indication that his cable box was not inside his apartment. *See id.* ¶ 30.

B.  *Procedural Background*

Beaumont commenced this action in New York State Supreme Court, Kings County, on July 7, 2010. Cablevision removed the action to this Court on August 4, 2010. Beaumont filed an amended complaint on September 30, 2010, asserting claims for employment discrimination on the basis of age, retaliation for participating in union organizing activities, prima facie tort, and retaliation for complaining of age discrimination.

Cablevision moved to dismiss all but the last claim. On February 10, 2011, I granted that motion. I concluded that Beaumont was barred from asserting an age discrimination claim because he had failed to include it in his administrative complaint. *See* Memorandum and

6

Order 6–8, ECF No. 27. I also concluded that the National Labor Relations Board had exclusive jurisdiction over his claim for anti-union retaliation and that he had not pleaded the elements of a prima facie tort claim. *See id.* at 8–11. The parties then proceeded with discovery on the remaining retaliation claim.

DISCUSSION

A. *Standard of Review*

"Summary judgment may be granted only if 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556, 567 (2d Cir. 2011) (quoting Fed. R. Civ. P. 56(a)). "[A] fact is material if it might affect the outcome of the suit under the governing law." *Bessemer Trust Co., N.A. v. Branin*, 618 F.3d 76, 85 (2d Cir. 2010) (internal quotation marks and citations omitted) (alteration in original). "A fact [dispute] is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (internal quotation marks and citations omitted). In making the determination as to whether summary judgment is appropriate, the evidence must be construed in the light most favorable to the nonmoving party and all reasonable inferences must be drawn in its favor. *Id.*; *Wachovia Bank, Nat'l Ass'n v. VCG Special Opportunities Master Fund, Ltd.*, 661 F.3d 164, 171 (2d Cir. 2011).[4]

---

[4] Cablevision is correct that Beaumont has failed to comply with this Court's Local Civil Rule 56.1, which requires the parties to submit statements of material facts in connection with a summary judgment motion. Local Civil Rule 56.1(b). Although Beaumont filed an affidavit which purports to be "in lieu" of his Rule 56.1 statement, Ramson Aff. ¶ 3, ECF No. 36, the affidavit does not include a "correspondingly numbered paragraph responding to each numbered paragraph" in Cablevision's Rule 56.1 statement, Local Civil Rule 56.1(b). While Beaumont's failure to comply with Rule 56.1 allows me to deem the properly supported factual assertions in Cablevision's Rule 56.1 Statement "admitted for purposes of the motion," *id.* 56.1(c); *see also T.Y. v. N.Y. City Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009), *cert. denied*, 130 S. Ct. 3277 (2010), it is unnecessary for me to do so in this case. Even excusing Beaumont's noncompliance with Rule 56.1, summary judgment is warranted for the reasons explained below.

7

B.   *Analysis*

Federal law, New York State law and New York City law prohibit not only discrimination in employment on the basis of age, but also retaliation for complaining about such discrimination.[5]  *See* 29 U.S.C. § 623(d); N.Y. Exec. Law § 296(1)(e), (7); N.Y.C. Admin. Code § 8-107(7); *see also Kessler v. Westchester Cnty. Dep't of Soc. Servs.*, 461 F.3d 199, 205 (2d Cir. 2006).  In assessing a defendant's motion for summary judgment on an ADEA retaliation claim, courts apply the burden-shifting framework first adopted by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 106, 110 (2d Cir. 2010).  Under that framework, the plaintiff bears the initial burden of establishing a prima facie case of retaliation.  *See id.* at 106 (citing *McDonnell Douglas*, 411 U.S. at 802).  "The plaintiff's burden at this stage is slight – he may establish a *prima facie* case with *de minimis* evidence."  *Wanamaker v. Columbian Rope Co.*, 108 F.3d 462, 465 (2d Cir. 1997).  If he satisfies this initial burden, the burden shifts to the defendant to articulate a legitimate non-retaliatory reason for its action.  *See Gorzynski*, 596 F.3d at 106 (citing *McDonnell Douglas*, 411 U.S. at 802).  If the defendant provides such a reason, the motion may still be denied if the plaintiff can show that the defendant's proffered reason was a pretext for retaliation.  *See id.*

---

[5]   The standards applied to claims under the ADEA are generally the same as those applied under the NYSHRL and the NYCHRL.  *See, e.g.*, *Ferraro v. Kellwood Co.*, 440 F.3d 96, 99 (2d Cir. 2006); *Wanamaker v. Columbian Rope Co.*, 108 F.3d 462, 467 (2d Cir. 1997) ("[A] district court may dismiss claims brought under the [NYSHRL] on the ground that the plaintiff failed to establish a claim under the ADEA.").  The parties do not identify any relevant differences in the law governing Beaumont's federal, state or city claims, and thus the same analysis applies to all of them.

1. *Prima Facie Case*

To establish a prima facie case of retaliation, Beaumont must show "(1) that [he] participated in a protected activity, (2) that [he] suffered an adverse employment action, and (3) that there was a causal connection between [his] engaging in the protected activity and the adverse employment action." *Gorzynski*, 596 F.3d at 110 (citing *Kessler*, 461 F.3d at 205–06); *see also Terry v. Ashcroft*, 336 F.3d 128, 141 (2d Cir. 2003). Here, Cablevision argues that Beaumont cannot establish the first element of his prima facie case (that he engaged in a protected activity) or the third element (that there was a causal link between his protected activity and Cablevision's actions).[6]

a. *Protected Activity*

There is no dispute that complaining to Cablevision management about age discrimination in Cablevision's granting of promotions would be a protected activity. According to Cablevision, however, Beaumont never complained about age discrimination; at best, he complained that he had lost out on a promotion to Cablevision employees with less tenure at the company. Cablevision argues that this complaint does not sound in age discrimination and therefore is not a protected activity.

There is some ambiguity in the record as to whether Beaumont complained to Cablevision about discrimination on the basis of age. During his deposition, Beaumont was asked several times about his complaints during the two breakfast meetings with Cablevision managers. Although he said several times that he had not complained about being discriminated

---

[6] Cablevision also asserts that Beaumont has not established a prima facie retaliation claim because he cannot establish that Cablevision was aware that he engaged in a protected activity. But because the protected activity in this case was complaining to Cablevision management, the question of whether Cablevision was aware of the protected activity is essentially identical to the question of whether there was protected activity.

9

against on the basis of age, he may have thought he was being asked about whether he had used

the word "discrimination" (or its variants):

> Q. So you never actually said I'm being discriminated against and it's based on my age, is that correct, at any time in your employment at Cablevision?
>
> A. I can't recall ever mentioning anything about being discriminated against. *I can't recall ever using that word discriminated against*.
>
> Q. And did you use *the word* discriminated against based on age?
>
> A. As I said, *I cannot recall ever using the word discriminated*.
>
> . . . .
>
> Q. You are saying you don't recall using the word discriminated. I am asking you a different question.
>
> A. If I said the word discriminated against, that covers it. *I said I cannot recall using the word discriminated*.
>
> . . . .
>
> Q. Did you ever complain about being discriminated against based upon race, gender, sexual orientation, or any other type of discrimination?
>
> . . . .
>
> A. Once again, *I said the word discriminate never came out of my mouth at any time*.

Beaumont Dep. 289–91, ECF No. 33-7 (emphasis added). At other times during his deposition, Beaumont expressly testified that he had complained about age discrimination. *See, e.g.*, *id.* at 289 ("I complained about being overlooked for promotion on age, yes."); *see also id.* at 204, 383. And in an affidavit submitted in opposition to the summary judgment motion, Beaumont reiterates that he made such complaints. *See* Beaumont Aff. ¶¶ 5–6, 38.

Viewing the evidence in the light most favorable to Beaumont, I conclude that Beaumont has established that he engaged in a protected activity. An employee "need not have explicitly used the words 'discrimination' . . . to afford his complaints protected activity status." *Krasner v. HSH Nordbank AG*, 680 F. Supp. 2d 502, 521 (S.D.N.Y. 2010); *see also, e.g.*, *Int'l Healthcare Exch., Inc. v. Global Healthcare Exch., LLC*, 470 F. Supp. 2d 345, 357 (S.D.N.Y. 2007); *Ramos v. City of New York*, No. 96 Civ. 3787 (DLC), 1997 WL 410493, at *3 (S.D.N.Y. July 22, 1997) (an employee need not use any "magic words" to engage in protected activity). Beaumont's testimony that he did not use the "word" discriminate therefore does not defeat this element of his prima facie case. Beaumont has consistently asserted, at his deposition and in his affidavit, that he complained he was being passed over for promotions in favor of younger employees. Although he may have never referred to this as "discrimination," there is sufficient evidence that he engaged in a protected activity nonetheless.

b. *Causal Connection*

"[A] plaintiff can indirectly establish a causal connection to support a . . . retaliation claim by 'showing that the protected activity was closely followed in time by the adverse [employment] action.'" *Gorman-Bakos v. Cornell Coop. Extension of Schenectady Cnty.*, 252 F.3d 545, 554 (2d Cir. 2001) (quoting *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1178 (2d Cir. 1996)) (last alteration in original). While there is no "bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship," *id.*, "district courts in this Circuit have consistently held that a passage of more than two months between the protected activity and the adverse employment action does not allow for an inference of causation," *Garrett v. Garden City Hotel, Inc.*, No. 05-CV-0962 (JFB) (AKT), 2007 WL 1174891, at *21 (E.D.N.Y. Apr. 19, 2007) (collecting cases); *see also, e.g.*, *Dixon v. Int'l*

*Fed'n of Accountants*, 416 F. App'x 107, 110 (2d Cir. 2011) (temporal proximity of four months between employee's complaints of discrimination and her termination was insufficient, without more, to show causal connection); *St. Jean v. United Parcel Serv. Gen. Serv. Co.*, No. 09-CV-3782 (DLI) (LB), 2012 WL 71843, at *11 (E.D.N.Y. Jan. 10, 2012); *Vinokur v. Sovereign Bank*, 701 F. Supp. 2d 276, 296 (E.D.N.Y. 2010). On the other hand, the Second Circuit has suggested that even "five months is not too long to find" a causal connection. *Gorzynski*, 596 F.3d at 110; *see also Gorman-Bakos*, 252 F.3d at 555.

Here, Beaumont claims he last complained about age discrimination in October or November 2008. He was denied a promotion on March 31, 2009, suspended the next day and terminated a week later. There was thus a gap of approximately four or five months between his complaint and any adverse action. Beaumont has not offered any additional evidence in support of a causal connection between his complaints about age discrimination and the subsequent denial of his application for a promotion and his termination. This case thus falls into somewhat of a gray area – it involves a temporal gap that is longer than what most courts in this Circuit have found sufficient to support a causal connection, *see Garrett*, 2007 WL 1174891, at *21, but not so long as to be beyond what the Second Circuit has held could be sufficient, *see Gorzynski*, 596 F.3d at 110.

In this case, I need not address whether the temporal proximity of four or five months is sufficient to establish a causal connection. As explained below, even assuming that Beaumont has established a prima facie case, Cablevision is still entitled to summary judgment.

2. *Cablevision's Non-Retaliatory Reasons and Evidence of Pretext*

Even assuming Beaumont has established a prima facie case, Cablevision has proffered legitimate non-retaliatory reasons for not promoting him and terminating his

employment.[7] Cablevision's evidence shows that it denied Beaumont's application for a promotion because other candidates had higher rankings than him. Its evidence also shows that Beaumont was suspended and fired for violating the EPB policy. Beaumont has failed to offer evidence from which a reasonable jury could conclude these reasons are a mere pretext for retaliation.

Both times Beaumont applied for a promotion, he was compared with other candidates on the basis of several factors, which Cablevision weighted using a pre-set formula. The promotion was then offered to candidates who received a higher ranking than Beaumont. Beaumont has not submitted evidence showing that he was passed over for a promotion in favor of other employees ranked below him, which might support an inference that retaliation factored into Cablevision's decision. Nor has he submitted evidence, or even alleged, that these rankings were designed or manipulated to disfavor him because of his complaints about age discrimination.

Beaumont has merely submitted evidence, such as a generally positive performance review and several awards he received from Cablevision, showing that he was qualified for a promotion. *See* Beaumont Aff. Exs. A, C. That may be true, but there were other applicants with superior qualifications, at least according to Cablevision's formula. The uncontroverted evidence shows that Cablevision selected those applicants for promotion. There is no evidence from which a reasonable jury could infer that this was a pretext for retaliation.

As for Cablevision's decision to terminate Beaumont for violating EPB policy, Beaumont argues that this was a mere "ruse" used to justify Cablevision's decision to terminate

---

[7] During oral argument on April 6, 2012, Beaumont's counsel referred to other alleged adverse employment actions, including the denial of overtime pay, but Beaumont failed to mention these actions in his papers opposing summary judgment. Any retaliation claim premised on these acts has thus been waived. *See Bd. of Managers of Mason Fisk Condo. v. 72 Berry St., LLC*, 801 F. Supp. 2d 30, 39 (E.D.N.Y. 2011).

13

him in retaliation for his complaints. Pl.'s Mem. of Law 7, ECF No. 36. He asserts that he never violated the EPB policy, that he offered credible explanations for being unable to gain access to his home, and that the ELT indication that one of his cable boxes was outside his home was the result of a technical glitch.

Although Beaumont has shown there is a genuine dispute as to whether he violated the EPB policy, he is not entitled to a trial on that issue because it is immaterial to the issue of pretext. To establish a retaliation claim, Beaumont would have to show that Cablevision used the alleged violation in an attempt to justify what was actually a decision to terminate his employment in retaliation for his complaints about age discrimination. To make such a showing, Beaumont might have submitted evidence that Cablevision managers manufactured or manipulated the ELT information, unreasonably refused to accept Beaumont's explanations, or dealt with Beaumont's suspected violation differently than they dealt with other employees' violations. But there is no such evidence.

Instead, the evidence shows that Cablevision received information indicating that Beaumont was violating company policy and it gave him a reasonable opportunity to demonstrate otherwise. There is no dispute that Cablevision's ELT indicated that one of Beaumont's cable boxes was outside his home.[8] There is also no dispute that, if the ELT was accurate, Beaumont had violated company policy. Cablevision managers attempted to verify whether the box was in Beaumont's home, but he was unable to provide them with access to his home after they waited for roughly two hours. The managers found Beaumont's excuses to be

---

[8] Beaumont asserts that the ELT is unreliable, but he has provided no evidence regarding the frequency with which the ELT provides inaccurate information. And although he suggests that ELT reading on April 1, 2009, may have been triggered by a splitter at his residence, he offers no evidence showing that he made anyone at Cablevision aware of this or that they unreasonably disregarded this information. Thus, he has not submitted evidence that Cablevision's reliance on the ELT information was so unreasonable as to support an inference of pretext.

14

not credible.[9] The ELT subsequently showed that the cable box at issue suddenly came online inside Beaumont's home later that day at the exact time he had regained access, suggesting that he or someone else had retrieved it and connected it at his home that day. There is also no dispute that Cablevision terminated other employees for violating the EPB policy, and there is no evidence that these employees had complained about discrimination.

The Cablevision managers may have been wrong about Beaumont's violation of the EPB policy.[10] They may not have made every conceivable effort to attempt to verify the physical location of his cable box. And they may have decided not to give Beaumont the benefit of the doubt. But even assuming that is true, there is no evidence that they used the incident as a pretext for a retaliatory termination. Accordingly, Cablevision is entitled to summary judgment.

CONCLUSION

For the reasons stated above, Cablevision's motion for summary judgment is granted. The Clerk of the Court is respectfully directed to enter judgment in favor of Cablevision.

So ordered.

John Gleeson, U.S.D.J.

Dated: April 9, 2012
      Brooklyn, New York

---

[9] There is a genuine dispute as to whether Entenmann offered to drive Beaumont to the hospital to get his keys from Bennett. However, even crediting Beaumont's testimony that there was no such offer, a reasonable jury could not find that Entenmann's investigation was so unreasonable as to warrant an inference of pretext.

[10] Beaumont's version of events was credited by the Unemployment Insurance Appeal Board of New York State. *See* Beaumont Aff. Ex. E at 2–3. However, as explained above, even if Beaumont did not violate the EPB policy, that alone would not support an inference that his termination was retaliatory.